IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| SONOC COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:23-cv-734 |
| | ) | |
| COASTAL TRIAL ATTORNEYS LLC | ) | |
| d/b/a NocLawyer.com; and ALBERT P. | ) | |
| MOLLO; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff SONOC Company, LLC ("Plaintiff"), by and through its undersigned counsel, hereby brings this action against Defendants Coastal Trial Attorneys LLC and Albert P. Mollo (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for Defendants' infringement of Plaintiff's federally registered NOCATEE trademark in violation of § 32(a) of the Lanham Act, 15 U.S.C. § 1114(1); for Defendants' federal unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); for Defendants' common law infringement; for Defendants' common law unfair competition; for Defendants' dilution of Plaintiff's marks in violation of Fla. Stat. § 495.151; for Defendants' violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201; and for

Defendants' violation of the Anti-Cybersquatting Act, 15 U.S.C. § 1125(d). Accordingly, Plaintiff seeks, among other relief, a permanent injunction to prevent Defendants from continuing to use marks and a domain that infringe Plaintiff's mark and from otherwise competing unfairly with Plaintiff; actual damages for Defendants' infringing conduct; treble damages for Defendants' willful misconduct; statutory damages for Defendants' cybersquatting; and the reasonable attorney's fees and costs incurred in prosecuting this action.

## THE PARTIES

2.      Plaintiff is a limited liability company organized under the laws of the State of Delaware, is registered to do business in Florida, and has a place of business in Jacksonville, Florida.

3.      Upon information and belief, Defendant, Coastal Trial Attorneys LLC d/b/a NocLawyer.com ("Coastal Trial"), is a limited liability company organized under the laws of the State of Florida, with its principal place of business at 315 Stone Ridge Drive, Ponte Vedra, Florida 32081.  Upon further information and belief, Coastal Trial can be served at the above address through service on its Registered Agent and Managing Member, Albert P. Mollo, at the same address.

4.      Upon information and belief, Defendant, Albert P. Mollo, is an individual who resides at 315 Stone Ridge Drive, Ponte Vedra, Florida 32081. Upon further information and belief, Mr. Mollo is a principal, owner, and founder of Coastal Trial. Upon further information and belief, Mr. Mollo can be served with process at his residence at the above address.

5.     Upon information and belief, in his capacity as principal, owner and founder of Coastal Trial, Defendant Mollo directs the activities of Coastal Trial, has personally participated in and caused Coastal Trial to engage in the acts complained of herein, and is the moving force behind such acts.

6.     Upon information and belief, Defendant Mollo has gained a financial benefit from his participation in the acts complained of herein.

7.     As a result, Defendant Mollo is personally liable for all acts of Coastal Trial complained of herein.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of the instant action pursuant to the provisions of 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.

9.     This Court has personal jurisdiction over Defendants because they each reside in this District.

10.     This Court also has personal jurisdiction over Defendants because Defendants committed a tortious act within this District.  In particular, upon information and belief, Defendants have used the infringing mark and trade name NOCLAWYER.COM and the infringing domain www.noclawyer.com to identify and promote Defendants' legal services in this District and have rendered such services in this District.

11.     A substantial part of the unlawful acts and violations hereinafter described have occurred and are occurring within the Middle District of Florida,

and the interstate trade and commerce hereinafter is affected, in part, within the Middle District of Florida.  Therefore, venue is appropriate in this Court pursuant to the provisions of 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

12.    Plaintiff is the owner of the mark NOCATEE for a wide variety of goods and services, including, but not limited to, real estate development services, management and operation of recreational facilities, real estate leasing services, real estate sales, clothing, towels and kitchenware (collectively, "Real Estate and Recreational Facility Services and Promotional Products").

13.    Plaintiff is the owner of several registrations of its NOCATEE mark, including Registration Nos. 2,569,107; 2,976,409; 3,431,724; 5,271,368; 5,271,369; 5,950,519; and 6,158,407 maintained on the Principal Register of the U.S. Patent and Trademark Office.  True and correct copies of Patent and Trademark Records showing the status and title of the NOCATEE registrations are attached as Exhibit 1.

14.    Registration Nos. 2,569,107; 2,976,409; and 3,431,724 of the NOCATEE mark have become incontestable under 15 U.S.C. § 1065.  True and correct copies of PTO records reflecting such status are included as part of Exhibit 1.  Accordingly, these registrations constitute conclusive evidence of the validity of the NOCATEE mark, of Plaintiff's ownership of the NOCATEE mark, and of Plaintiff's exclusive right to use the NOCATEE mark in commerce under 15 U.S.C. § 1115(b).

4

15.    Plaintiff is also the owner of the marks NOCATEE SPRAY and NOCATEE SPLASH for entertainment in the nature of a water park and amusement center and shirts.

16.    Plaintiff is the owner of U.S. Registration Nos. 3,854,581 and 6,158,421 of the NOCATEE SPLASH mark.  True and correct copies of Patent and Trademark Office records showing the status and title of the NOCATEE SPLASH registrations are attached as Exhibit 2.

17.    Plaintiff is also the owner of U.S. Registration Nos. 5,903,622 and 6,158,419 of the mark NOCATEE SPRAY.  True and correct copies of Patent and Trademark Office records showing the status and title of the NOCATEE SPRAY registrations are attached as Exhibit 3.

18.    The Parc Group is a licensee of Plaintiff.  The Parc Group is the master developer of the NOCATEE community and provides consulting and management services to Plaintiff under the NOCATEE mark.

19.    One of Plaintiff's most recognized communities is the NOCATEE community, located in Ponte Vedra, Florida (the "NOCATEE Community").

20.    The NOCATEE Community is a nationally known, master-planned community that blends a variety of neighborhoods with schools, parks, recreation, offices, shopping, restaurants, and other amenities.

21.    The NOCATEE Community has been ranked among the Top 15 Best-Selling Master-Planned Communities in the United States for the last ten years,

and the Community has received substantial national acclaim. Approximately 800 new homes are sold in the NOCATEE Community each year.

22.    Exclusively, since at least as early as 2002, Plaintiff has continuously used its NOCATEE mark to promote and identify the NOCATEE Community, including all Real Estate and Recreational Facility Services and Promotional Products associated with such Community.  The rights supported by such use of the NOCATEE mark and the goodwill associated therewith inure to the benefit of Plaintiff.

23.    Plaintiff extensively promotes the NOCATEE Community, including the Real Estate and Sports Facility Services and Promotional Products that are associated with the Community, on the Internet through its www.nocatee.com website.  True and correct copies of printouts from Plaintiff's website made on June 14, 2023, showing such use are attached as Exhibit 4.

24.    Plaintiff also promotes the NOCATEE Community on the Internet through The Parc Group's www.parcgroup.net website.  True and correct copies of printouts from The Parc Group's website made on June 14, 2023, are attached as Exhibit 5.

25.    Plaintiff also promotes the NOCATEE Community on social media. True and correct printouts from Plaintiff's Facebook, Twitter, Instagram, LinkedIn, Pinterest and YouTube pages made on June 14, 2023, are attached as Exhibit 6.

26.     Since 2005, Plaintiff has spent nearly 17.5 million dollars to advertise and promote throughout the United States the NOCATEE Community and the amenities and services offered in connection with such Community.  As a result of such advertising and promotion, and as evidenced by Plaintiff's registrations, the NOCATEE mark has become well known and widely accepted and respected by the consuming public and in the trade.  As a further result of such advertising, and as evidenced by Plaintiff's registrations, Plaintiff's NOCATEE mark has become distinctive, identifying products and services emanating only from Plaintiff, and symbolize extremely valuable goodwill, all as evidenced by Plaintiff's substantial revenues from the NOCATEE Community since 2005.

27.     The NOCATEE Community is widely recognized throughout the United States, and symbolizes Plaintiff's reputation for development of high quality master-planned communities.  Attached as Exhibit 7 are true and correct copies of articles about various awards won by SONOC and/or The Parc Group relating to the NOCATEE Community.

28.     Plaintiff is also owner of the NOC mark, which is a well-recognized shortened form of the NOCATEE mark.  Plaintiff markets and sells various products that bear the NOCATEE and NOC marks, including stickers, hats, t-shirts, and tumblers.  Attached as Exhibit 8 are printouts made on June 14, 2023, from Plaintiff's shopnocatee.com website showing some of Plaintiff's NOCATEE and NOC brand products that are marketed and sold by Plaintiff.  Residents of the

NOCATEE community are very familiar with the use of the NOC mark by Plaintiff to identify the NOCATEE community and goods and services relating thereto.

29.    Defendant Mollo is a resident of the NOCATEE Community, and Defendant Coastal Trial's principal place of business is located in the NOCATEE Community at Defendant Mollo's residence.

30.    Upon information and belief, in or about fall 2022, with knowledge of Plaintiff's rights in and to the NOCATEE and NOC marks (the "NOCATEE Marks"), Defendants adopted and began using the name and mark NOCLAWYER.COM and Plaintiff's NOCATEE mark (collectively, the "Infringing Marks") to identify and promote Defendants' legal services.  A true and correct copy of a printout made on June 14, 2023, from Defendants' noclawyer.com website showing use of the Infringing Marks, Infringing Name, and Infringing Domain are attached as Exhibit 9.

31.    Upon information and belief, with knowledge of Plaintiff's rights in and to the NOCATEE Marks, Defendants obtained a registration of the domain <noclawyer.com> (the "Infringing Domain"), through a privacy service, and began using such Domain to identify and promote Defendants' legal services.  A true and correct copy of the Whois record for the Infringing Domain is attached as Exhibit 10.  Upon information and belief, such Domain was originally registered on November 30, 2021, by an unknown person.

32.    Plaintiff's NOCATEE Marks were distinctive before the Infringing Domain was registered on November 30, 2021.

33.    On March 2, 2023, Defendant Coastal Trial applied for and obtained a registration of the fictitious name "NOCLAWYER.COM" from the State of Florida ("Infringing Name").  True and correct copies of such application and registration are attached as Exhibit 11.  Defendant Mollo signed the application for the NOCLAWYER.COM fictitious name on behalf of Defendant Coastal Trial.  As shown on Exhibit 9, Defendants are prominently using the Infringing Name to identify their business and promote their legal services.

34.    Upon information and belief, with knowledge of Plaintiff's rights in and to the NOCATEE Marks, Defendants have adopted, advertised and used the Infringing Marks, Infringing Name, and Infringing Domain to identify and promote their legal services for the purpose of  1) trading on the goodwill and reputation of Plaintiff and its NOCATEE Community, including Plaintiff's Real Estate and Sports Facility Services and Promotional Products associated with the Community; 2) capitalizing on Plaintiff's financial investments in advertising and promoting Plaintiff's Real Estate and Sports Facility Services and Promotional Products and Plaintiff's NOCATEE Community; and 3) misleading the purchasing public into believing that Defendants' legal services are legitimately connected to or affiliated with the NOCATEE Community, or are sponsored or approved by, Plaintiff.

35.    Upon information and belief, Defendants are advertising and promoting their legal services in a manner calculated to call to mind Plaintiff's NOCATEE Marks and to create the false impression that Defendants' legal services

are affiliated, connected, or associated with the NOCATEE Community and/or that they have the sponsorship or approval of Plaintiff.  The public is likely to be misled or deceived by the false impression arising from Defendants' use of the Infringing Marks, Infringing Name, and Infringing Domain for Defendants' legal services.

36.    Defendants' advertising and promotion of their legal services under the Infringing Marks, Infringing Name, and Infringing Domain are likely to cause confusion, mistake, and deception as to the source and origin of Defendants' legal services.

37.    On March 13, 2023, Plaintiff's counsel sent a letter to Defendants notifying them of Plaintiff's exclusive rights in the NOCATEE Marks and demanding that Defendants discontinue and refrain from their infringing, unfair, and improper conduct.  A true and correct copy of such letter (without enclosures) is attached as Exhibit 12.

38.    On March 27, 2023, Defendant Mollo contacted Plaintiff's counsel by email to schedule a time for a telephone conversation about Plaintiff's letter.

39.    On March 28, 2023, Defendant Mollo and Plaintiff's counsel spoke by telephone about Plaintiff's letter.  Defendant Mollo advised that he was going to consult with some lawyer friends on the issue and would provide Plaintiff's counsel with a substantive response by April 11, 2023.  He also stated that he preferred to keep using "Noclawyer.com" because it was a "gimmick" that was helpful to his business.

40.     On April 12 and 17, 2023, after not receiving any substantive response from Defendants and noting that Defendants were continuing to use the Infringing Marks, Infringing Name, and Infringing Domain to identify and promote their legal services, Plaintiff's counsel sent emails to Defendants to follow up on the matter.  A true and correct printout showing such emails is attached as Exhibit 13.

41.     On April 20, 2023, Defendant Mollo and Plaintiff's counsel spoke by telephone again about Plaintiff's Nocatee Marks and Defendants' continued infringing use of NOCLAWYER.COM.  During that conversation, Defendant Mollo stated that he would continue using NOCLAWYER.COM until a judge tells him that he cannot do so.

42.     Since receiving the March 13, 2023 letter advising Defendants of Plaintiff's trademark rights and since the subsequent emails and telephone conversations, Defendants have continued to identify and promote their legal services under the Infringing Marks, Infringing Name, and Infringing Domain in blatant disregard of Plaintiff's trademark rights.

43.      As of the date of this Complaint, Defendants are continuing to use the Infringing Marks, Infringing Name, and Infringing Domain to identify and promote Defendants' legal services.

44.     Defendants' continuing use of the Infringing Marks, Infringing Name, and Infringing Domain demonstrates a willful and bad faith intent to create confusion, deception, and mistake in the minds of Defendants' customers and potential customers and to trade on Plaintiff's goodwill by implying a connection

or relationship between Defendants' legal services, on the one hand, and Plaintiff's Real Estate and Sports Facility Services and Promotional Products and Plaintiff's NOCATEE Community, on the other, as a result of which Defendants have been and will continue to be unjustly enriched.

## COUNT I – FEDERAL TRADEMARK INFRINGEMENT
## (15 U.S.C. § 1114)

45.     Plaintiff incorporates by reference and realleges Paragraphs 1 through 44 of the Complaint as though fully set forth herein.

46.     Defendants' use of the Infringing Marks, Infringing Name, and Infringing Domain in connection with legal services is likely to cause confusion, to cause mistake, or to deceive persons into the erroneous belief that Defendants' legal services are authorized by, sponsored by, or in some way connected with Plaintiff.

47.     Defendants' use of the Infringing Marks, Infringing Name, and Infringing Domain constitutes infringement of Plaintiff's federally registered NOCATEE mark in violation of Section 32 (1) of the Lanham Act, as amended, 15 U.S.C. § 1114.

48.     Defendants have actively and recklessly or knowingly committed their acts of infringement and thereby caused such infringement.

49.     Upon information and belief, Defendant Mollo has actively participated as the moving force in the decision to engage in such infringement.

50.    Upon information and belief, Defendant Mollo caused the infringement as a whole to occur.

51.    The aforesaid acts of Defendants are greatly and irreparably damaging to Plaintiff and will continue to be greatly and irreparably damaging to Plaintiff unless enjoined by this Court, as a result of which Plaintiff is without an adequate remedy at law.

52.    This case is exceptional under 15 U.S.C. § 1117, entitling Plaintiff to the reasonable attorneys' fees incurred in prosecuting this action.

## COUNT II – FEDERAL UNFAIR COMPETITION

## (15 U.S.C. § 1125 (a))

53.    Plaintiff incorporates by reference and realleges Paragraphs 1 through 44 of the Complaint as though fully set forth herein.

54.    Defendants' unauthorized use of the Infringing Marks, Infringing Name, and Infringing Domain constitutes a false designation of origin and false description, and falsely represents to the public an affiliation, connection, or association of Defendants' legal services with Plaintiff or an approval of Defendants' legal services by Plaintiff.

55.    By engaging in the aforesaid acts, Defendants have falsely represented to the public that their legal services are legitimately affiliated or connected with Plaintiff, have falsely described that their legal services are sponsored or approved by Plaintiff, and have falsely designated that their legal services originate from Plaintiff.

56.     The aforesaid acts of Defendants constitute violations of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125 (a).

57.     Defendants have actively and recklessly or knowingly committed their acts of unfair competition and thereby caused such unfair competition.

58.     Upon information and belief, Defendant Mollo has actively participated as the moving force in the decision to engage in such unfair competition.

59.     Upon information and belief, Defendant Mollo caused the unfair competition as a whole to occur.

60.     The aforesaid acts of Defendants are greatly and irreparably damaging to Plaintiff and will continue to be greatly and irreparably damaging to Plaintiff unless enjoined by this Court, as a result of which Plaintiff is without an adequate remedy at law.

61.     This case is exceptional under 15 U.S.C. § 1117, entitling Plaintiff to the reasonable attorneys' fees incurred in prosecuting this action.

**COUNT III – COMMON LAW TRADEMARK INFRINGEMENT**

62.     Plaintiff incorporates by reference and realleges Paragraphs 1 through 44 of the Complaint as though fully set forth herein.

63.     Defendants have violated and infringed Plaintiff's common law rights in Plaintiff's NOCATEE Marks in violation of the common law of Florida.

64.     Defendants have actively and recklessly or knowingly committed their acts of infringement and thereby caused such infringement.

65.     Upon information and belief, Defendant Mollo has actively participated as the moving force in the decision to engage in such infringement.

66.     Upon information and belief, Defendant Mollo caused the infringement as a whole to occur.

67.     The aforesaid acts of Defendants are greatly and irreparably damaging to Plaintiff and will continue to be greatly and irreparably damaging to Plaintiff unless enjoined by this Court, as a result of which Plaintiff is without an adequate remedy at law.

### **COUNT IV – COMMON LAW UNFAIR COMPETITION**

68.     Plaintiff incorporates by reference and realleges Paragraphs 1 through 44 of the Complaint as though fully set forth herein.

69.     Defendants' aforesaid acts constitute unfair competition in violation of the common law of Florida in that:

(a)     Said acts enable and will continue to enable Defendants to obtain the benefit of and trade on the goodwill of Plaintiff;

(b)     Said acts damage and will continue to damage Plaintiff's goodwill in that Plaintiff does not have control over the business and services of Defendants;

(c)     Said acts have caused and are likely to continue to cause confusion, mistake or deception of the public; and

(d)     Said acts will result in the unjust enrichment of Defendants.

70.    Defendants have actively and recklessly or knowingly committed their acts of unfair competition and thereby caused such unfair competition.

71.    Upon information and belief, Defendant Mollo has actively participated as the moving force in the decision to engage in such unfair competition.

72.    Upon information and belief, Defendant Mollo caused the unfair competition as a whole to occur.

73.    The aforesaid acts of Defendants are greatly and irreparably damaging to Plaintiff and will continue to be greatly and irreparably damaging to Plaintiff unless enjoined by this Court, as a result of which, Plaintiff is without an adequate remedy at law.

## COUNT V – VIOLATION OF FLORIDA ANTI-DILUTION STATUTE

74.    Plaintiff incorporates by reference and realleges Paragraphs 1 through 44 of the Complaint as though fully set forth herein.

75.    Plaintiff's NOCATEE Marks are famous in the State of Florida and were famous in the State of Florida before Defendants first adopted the Infringing Marks, Infringing Name, and Infringing Domain.

76.    Defendants' aforesaid acts dilute Plaintiff's NOCATEE Marks in that Defendants' use of the Infringing Marks, Infringing Name, and Infringing Domain has caused and will continue to cause the diminution of the value of the goodwill

represented by, and of the distinctiveness of, Plaintiff's NOCATEE Marks, all in violation of Fla. Stat. § 495.151.

77.    Upon information and belief, Defendant Mollo has actively participated as the moving force in the decision to engage in such acts of dilution.

78.    Upon information and belief, Defendant Mollo caused the acts of dilution as a whole to occur.

79.    The aforesaid acts of Defendants are greatly and irreparably damaging to Plaintiff and will continue to be greatly and irreparably damaging to Plaintiff unless enjoined by this Court, as a result of which, Plaintiff is without an adequate remedy at law.

## COUNT VI – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

80.    Plaintiff incorporates by reference and realleges Paragraphs 1 through 44 of the Complaint as though fully set forth herein.

81.    Defendants' aforesaid acts constitute unfair and deceptive trade practices in violation of Fla. Stat. § 501.20 *et seq*.

82.    Defendants have actively and recklessly or knowingly committed their deceptive trade practices and thereby caused such deceptive trade practices.

83.    Upon information and belief, Defendant Mollo has actively participated as the moving force in the decision to engage in such deceptive trade practices.

84.    Upon information and belief, Defendant Mollo caused the deceptive trade practices as a whole to occur.

85.    The aforesaid acts of Defendants are greatly and irreparably damaging to Plaintiff and will continue to be greatly and irreparably damaging to Plaintiff unless enjoined by this Court, as a result of which, Plaintiff is without an adequate remedy at law.

## COUNT VII – VIOLATION OF ANTI-CYBERSQUATTING ACT – (15 U.S.C. § 1125(d))

86.    Plaintiff incorporates by reference and realleges Paragraph 1 through 44 of the Complaint as though fully set forth herein.

87.    Upon information and belief, one of the Defendants is the true registrant of the Infringing Domain and is using the privacy service Domains by Proxy, LLC to shield their identity.

88.    The Infringing Domain is confusingly similar to Plaintiff's NOCATEE Marks.

89.    Plaintiff's NOCATEE mark was registered at the time of Defendants' registration of the Infringing Domain and when Defendants began using the Infringing Domain.

90.    Plaintiff's NOCATEE Marks were distinctive at the time of Defendants' registration of the Infringing Domain and when Defendants began using the Infringing Domain.

91.     Defendants registered and have used the Infringing Domain with a bad faith intent to profit from Plaintiff's NOCATEE Marks.

92.     Defendants had actual knowledge of Plaintiff's NOCATEE Marks before they registered the Infringing Domain.

93.     Defendants continue to use the Infringing Domain with a bad faith intent to profit from Plaintiff's NOCATEE Marks.

94.     Defendants' acts constitute cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

95.     Defendants have actively and recklessly or knowingly committed their acts of cybersquatting and thereby caused such cybersquatting.

96.     Upon information and belief, Defendant Mollo has actively participated as the moving force in the decision to engage in such cybersquatting.

97.     Upon information and belief, Defendant Mollo caused the cybersquatting as a whole to occur.

98.     The aforesaid acts of Defendants are greatly and irreparably damaged to Plaintiff and will continue to be greatly and irreparably damaging to Plaintiff unless enjoined by this Court, as a result of which Plaintiff is without an adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

(a)    That judgment on the Complaint be entered for Plaintiff and against Defendants;

(b)    That Defendants, their affiliated entities, servants, agents, representatives, employees, agents, and successors, heirs, and all other persons in active concert or participation with any or all of them, be enjoined and restrained from the following acts:

(1)    Using, in the advertisement, promotion, rendering, offering for sale, and sale of legal services or any other goods or services the Infringing Marks, Infringing Name, or Infringing Domain and/or any other colorable imitation of Plaintiff's NOCATEE Marks;

(2)    Expressly or impliedly representing to customers, potential customers, or the public that Defendants' legal services or any other goods or services are affiliated in any way with Plaintiff or Plaintiff's NOCATEE Community;

(3)    Representing by words or conduct that Defendants' legal services or any other goods or services are authorized by, sponsored by, endorsed by, or otherwise connected with Plaintiff or Plaintiff's NOCATEE Community;

(4)    Doing any other acts calculated, or likely, to cause confusion or mistake in the mind of the public or to lead consumers into the belief that Defendants' legal services or any other goods or services are authorized,

sponsored, licensed, endorsed, or promoted by Plaintiff, or are otherwise affiliated or connected with Plaintiff or Plaintiff's NOCATEE Community;

     (5)    Otherwise infringing Plaintiff's NOCATEE Marks;

     (6)    Diluting Plaintiff's NOCATEE Marks; and

     (7)    Competing unfairly with Plaintiff in any manner;

(c)    That Defendants be ordered to cancel their registration of the Infringing Domain;

(d)    That Defendant Coastal Trial be ordered to cancel its registration of the Infringing Name;

(e)    That the Court find Defendants' acts of infringement, unfair competition and dilution to be willful;

(f)    That Plaintiff receive from Defendants three times Plaintiff's actual damages caused by the acts of Defendants, and Defendants' profits from any sales of legal services under the Infringing Marks, Infringing Name, and/or Infringing Domain;

(g)    That Plaintiff be awarded statutory damages for Defendants' cybersquatting pursuant to 15 U.S.C. § 1117;

(h)    That this case be found to be exceptional and that Defendants be required to pay Plaintiff exemplary and punitive damages, the costs of this action, together with reasonable attorney's fees and disbursements;

(i)    That Defendants be ordered to deliver up for destruction all inventory, labels, signs, prints, insignia, brochures, and any other written or recorded

material or advertisements in Defendants' possession or control containing the NOCATEE mark, the NOCLAWYER.COM mark or name, or the Infringing Domain and/or any colorable imitation thereof.

(j)    That Defendants be required, in accordance with 15 U.S.C. § 1116, to file with this Court and serve on Plaintiff within thirty (30) days from the date of entry of any injunction a report, in writing and under oath, setting forth in detail the manner and form in which Defendants has complied with the terms of the injunction; and

(k)    That Plaintiff be awarded such other and further relief as the Court deems just and equitable.

Dated: June 23, 2023

Respectfully submitted,

SMITH, GAMBRELL & RUSSELL, LLP

*/s/ Richard D. Rivera*
Richard D. Rivera
Florida Bar No. 108251
rrivera@sgrlaw.com
Bank of America Tower
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
(904) 598-6109
Fax: (904) 598-6209

Counsel for Plaintiff SONOC Company, LLC

Of Counsel:

Elizabeth G. Borland (*pro hac vice* motion forthcoming)
Georgia Bar No. 460313
egborland@sgrlaw.com
SMITH, GAMBRELL & RUSSELL, LLP

1105 W. Peachtree St. NE
Suite 1000
Atlanta, Georgia 30309
(404) 815-3645
Fax: (404) 685-6945